UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMERIA B., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-cv-04664 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sameria B.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits under Title II of the Social Security Act. Plaintiff has filed a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [dkt. 14], which the Court will construe as a motion for summary judgment; the Commissioner has filed a cross-motion for summary judgment [dkt. 21]. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 14], denies the Commissioner's motion for summary judgment [dkt. 21], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

**I. Background**

    **a. Procedural History**

In December 2015, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d). [Administrative Record ("R.") 198.] After her application was denied initially and on reconsideration, Plaintiff requested an administrative hearing. [R. 155.] In January 2018, Plaintiff appeared with counsel and testified at a hearing before

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

Administrative Law Judge ("ALJ") Deborah Ellis. [R. 15-33.] A vocational expert also testified. *Id.* On August 2, 2018, the ALJ determined that Plaintiff was not disabled. [R. 22-28.] On May 14, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. [R. 1-8.] Plaintiff then filed suit pursuant to 42 U.S.C. §§ 405(g).

    b.    **Relevant Medical Background**

Plaintiff was born in November 1979 and was 35 years old on her alleged disability onset date. Plaintiff claims that she cannot work primarily due to blindness, a cerebral aneurysm, arthritis and pseudotumor cerebri, also known as idiopathic intracranial hypertension.

Prior to her alleged onset date, Plaintiff had a remote history of a cerebral aneurysm, discovered during a screening exam in 2003. [R. 357.] In November 2015, Plaintiff's neurosurgeon noted an irregularly shaped right posterior communicating artery aneurysm, which had increased in size since her last imaging. [R. 447.] Plaintiff subsequently underwent a pipeline stent to treat the aneurysm, which was successful. [R. 429.] In conjunction with her condition, Plaintiff has also reported intermittent headaches, which have ranged in frequency from daily to once every two weeks. [R. 489, 629.] Though Plaintiff's headaches have been attributed to idiopathic intracranial hypertension [R. 514.], other doctors have questioned the diagnosis. [R. 622.] Plaintiff has been prescribed several different medications to manage her headaches. [R. 460, 477, 489, 507, 620.]

Plaintiff has also complained of vision problems, pain and pressure in the eyes, and eyelid and facial swelling. She has been legally blind in her left eye since birth and has reported blurred vision, floaters, and light flashes in one or both eyes. [R. 354, 484, 511.] Additionally, Plaintiff has experienced pain or pressure in both eyes, along with eyelid swelling, left periorbital swelling, mild supraorbital swelling, and right eye ptosis. [R. 349, 366, 542, 585, 640.] Other treatment records also note reduced

2

facial sensation bilaterally, right facial weakness, and facial drooping and tingling. [R. 354, 613, 621, 629, 641.]

Additionally, Plaintiff has experienced pain and swelling in the knees [R. 673, 693, 914.] In the left knee, specifically, she has complained of pain and instability, along with buckling episodes. [R. 342.] Plaintiff has been diagnosed with chronic pain in both knees [R. 672.]; bilateral knee osteoarthritis [R. 677.]; internal derangement of the left knee [R. 835.]; bilateral patellofemoral osteoarthritis [R. 719.]; patellofemoral stress syndrome of the right knee [R. 835.]; lateral compartment arthritis of the left knee [R. 848.]; chondromalacia of patella bilaterally [R. 683.]; and grade III and IV chondral changes on the patella, in the trochlear region, and on the lateral tibial plateau in the left knee. [R. 838.] Discussions about potential knee surgery began in September 2016, and Plaintiff ultimately underwent left knee arthroscopy surgery in December 2016. [R. 812.] While Plaintiff felt she was "progressing" soon after the procedure, she continued to complain of pain. [R. 839.] As a result, Plaintiff received a number of knee injections bilaterally and underwent physical therapy for an approximately two-year period, from January 2016 to November 2017. [R. 686, 719, 728, 736, 772, 838, 859, 895, 915, 1049, 1081-1104, 1105-29, 1135-40, 1187-91, 1571.]

Plaintiff ultimately decided to forego subsequent nerve block injections and instead sought a permanent solution for her knee problems. [R. 886.] While Plaintiff's doctor was hesitant to perform a full knee replacement surgery due to Plaintiff's young age and history of aneurysms, he ultimately decided it was reasonable to do so, given Plaintiff's severe knee pathology and pain [R. 906.] Thus, Plaintiff underwent a left knee arthroplasty, or full knee replacement, in July 2017. [R. 936.] Medical records also indicate that Plaintiff used a cane at times, both before and after surgery. [R. 760, 867, 881, 1068.]

c. **The ALJ's Decision**

On August 2, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 15-

3

33.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 30, 2015. [R. 21.] At Step Two, the ALJ determined that Plaintiff had two severe impairments: the late effects of a cerebrovascular accident and osteoarthritis of the bilateral knees. *Id.* The ALJ also detailed Plaintiff's nonsevere impairments of degenerative disc disease and loss of vision in the left eye. *Id.* At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 22.]

Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work, with the following additional limitations: only occasionally climbing ramps and stairs; no climbing of ladders, ropes or scaffolds; only frequently stooping; limited depth perception in the left eye, but full vision in the right eye; avoidance of concentrated exposure to unprotected heights and moving mechanical parts; only occasionally operating a motor vehicle at work; and use of a cane to ambulate and to aid in position change. *Id.* Additionally, the ALJ determined that Plaintiff would be off task up to 10% of the day, due in part to repositioning, and would be absent about one day per month. *Id.*

At Step Four, based on the VE's testimony, the ALJ found that Plaintiff was capable of performing her past relevant work as a doctor's office receptionist (DOT 237.367-038), office administrator (DOT 169.167-010), appointment maker (DOT 237.367-010), and payroll clerk (DOT 215.382-014). [R. 27-28.] The ALJ also determined that the VE's testimony was consistent with the Dictionary of Occupational Titles. [R. 28.] Because of these findings, the ALJ ended the inquiry at Step Four and found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last

---

[2] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must

5

nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Among other claims, Plaintiff argues that the ALJ's analysis of her subjective symptoms was legally insufficient. The Court agrees.

In 2016, the Social Security Administration clarified its policy on subjective symptom evaluation, eliminating the term "credibility" and making clear that "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 16, 2016); *Cassandra S. v. Berryhill*, 2019 WL 1055097, at *5 (S. D. Ind. Mar. 6, 2019). The change in terminology "is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

In conducting her analysis, the ALJ cannot disregard a claimant's subjective complaints "solely because there is no objective medical evidence supporting [them]." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)); *see also Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). Instead, SSR 16-3p requires ALJs to evaluate other evidence, including "the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. As before, ALJs must also consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

While the ALJ need not discuss every piece of evidence, she must build a logical bridge from the evidence to her conclusion. *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). As such, the ALJ is not permitted to "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010); *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010). Though the ALJ's evaluation must be supported by substantial evidence, a reviewing court will not overturn it unless it is patently wrong. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). Nonetheless, a remand may be warranted if the ALJ fails to adequately explain her subjective symptom analysis "by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

Here, the Court finds that the ALJ's reasoning for discrediting Plaintiff's symptom statements is unsupported by substantial evidence, warranting remand on the issue.

### a. Daily activities

First, the ALJ neglected to explain how Plaintiff's ability to perform her daily activities undermined her allegations of disability. The Seventh Circuit has consistently cautioned ALJs to not place "undue weight" on a claimant's household activities in evaluating the claimant's ability to perform work outside the home. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (stating that "an ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time"); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (a claimant's "ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace"). While an ALJ can consider a claimant's daily activities in her subjective symptom analysis, her evaluation "must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ concluded that Plaintiff's daily activities "are not limited to the extent one would

expect given her allegations." [R. 26.] Specifically, the ALJ questioned Plaintiff's ability to take her children to school, complete light meal preparation, drive regularly, check her email and Facebook, pay bills, wash dishes, make beds, attend physical therapy and doctor's appointments, and climb stairs to her apartment. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("The ALJ should have explained any inconsistencies between [claimant's] activities of daily living and the medical evidence."); *Nelson v. Colvin*, 2016 WL 337143, at *6 (N.D. Ill. Jan. 27, 2016) ("The mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment."). In her explanation, the ALJ also ignored the difficulties Plaintiff experiences when she performs those activities: she has headaches while looking at her computer, she is lethargic most of the day, she cannot sweep or mop because of back pain and dizziness, and she sometimes needs her children to read her credit card and bills due to double vision and floaters. *See Clark v. Saul*, 421 F. Supp. 3d 628, 632 (N.D. Ind. 2019) (finding error when the "ALJ failed to discuss which symptoms were inconsistent with [claimant's] daily activities" and when "the ALJ failed to consider the manner in which the Plaintiff completed her daily activities"); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (finding error when the "ALJ ignored [claimant's] qualifications as to *how* [s]he carried out" daily activities) (emphasis in original).

While the ALJ is not required to mention every piece of evidence in her decision, she "must build a logical bridge from evidence to conclusion." *Villano*, 556 F.3d at 562. Here, the ALJ failed to do so. First, the ALJ neglected to mention which daily activities were allegedly inconsistent with Plaintiff's symptoms. Instead, the ALJ merely listed Plaintiff's daily activities, then summarily concluded that they were "not limited to the extent one would expect" based on Plaintiff's allegations. [R. 26.] Second, the ALJ also disregarded the limited manner in which Plaintiff performed her daily activities. For instance, Plaintiff's pain, lethargy, headaches and vision problems negatively impacted her ability to perform daily tasks, yet the ALJ ignored evidence regarding the impact of those

8

impairments. Accordingly, the ALJ failed to properly articulate her reasoning for rejecting Plaintiff's subjective statements, warranting remand.

### b. Knee pain and treatment

Additionally, the ALJ used flawed logic when interpreting Plaintiff's statements about her knees. First, the ALJ claimed that Plaintiff's medical evidence, showing only sporadic cane use, "detract[ed]" from her testimony of constant cane use at the hearing. [R. 26.] However, the ALJ relied on outdated reports from May 2016, September 2016, and February 2017 to discredit Plaintiff's January 2018 hearing testimony, in which she claimed to need a cane all of the time. [R. 89-91.] As noted extensively in the record and in the ALJ's opinion, Plaintiff suffered from osteoarthritis of the bilateral knees – a degenerative condition.[3] *See Scrogham v. Colvin*, 765 F.3d 685, 696-97 (7th Cir. 2014) (finding error when the ALJ failed to consider the progressive nature of claimant's disease and the fact that her physical abilities might differ over time); *Roddy*, 705 F.3d at 637 ("The term 'degenerative' implies that [claimant] suffers from a condition that will get worse over time, especially without proper treatment; it is not one that will remain stable or improve."). Moreover, Plaintiff discussed in detail the treatments and surgeries she underwent for her condition after February 2017, the last date the ALJ mentioned in her discussion of Plaintiff's cane use. In fact, medical records from after Plaintiff's July 2017 knee replacement surgery confirmed that she was "ambulating with assistance from a cane." [R. 1049.] Before discrediting Plaintiff's statements, the ALJ should have evaluated the impact of Plaintiff's worsening knee pathology and the functional limitations caused by her knee replacement surgery.

Second, the ALJ took issue with Plaintiff's purported need to elevate her legs above heart level. Notably, the ALJ did not contest Plaintiff's testimony about having to elevate her legs generally – only that the record contained no instructions about leg height or about how long or how often to elevate.

---

[3] "Osteoarthritis is a degenerative disease that worsens over time, often resulting in chronic pain." Mayo Clinic, *Osteoarthritis*, available at https://www.mayoclinic.org/diseases-conditions/osteoarthritis/symptoms-causes/syc-20351925 (last visited June 26, 2020).

The ALJ appeared to emphasize that Plaintiff's leg elevation was a post-operative instruction and was required for only a short time after Plaintiff's knee replacement surgery. But according to Plaintiff's medical records, she was told to elevate her left leg in July 2017, soon after her surgery, and in November 2017 to reduce swelling. [R. 1040, 1068.] According to her testimony, Plaintiff was again told to elevate her leg during a doctor's visit that occurred a few weeks before the January 2018 hearing. [R. 82-83.] As Plaintiff's claims about elevating her leg were substantially supported by the objective medical evidence, any inconsistencies were trivial. *See Stage v. Colvin*, 812 F.3d 1121, 1127 n.1 (7th Cir. 2016) (finding inconsistencies in doctor's treating notes and in the RFC questionnaire "so minor as to be immaterial"); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("To the extent we see any inconsistencies here, they do not rise above trivial matters that the ALJ did not inquire into during [claimant's] hearing."). Such trivial inconsistencies fail to provide a sound basis for rejecting Plaintiff's subjective statements.

Third, Plaintiff contends that the ALJ faulted her for electing to undergo left knee replacement surgery. While the ALJ's discussion of this issue is not included with the rest of her subjective symptom analysis, Plaintiff alleges error in the assessment, which the Court will address accordingly. The ALJ noted that Plaintiff "insisted on knee replacement surgery despite recommendations that she try and maximize all nonoperative care to avoid surgical intervention." [R. 25.] Though an ALJ may consider a claimant's failure to "follow prescribed treatment that might improve symptoms," the ALJ must also evaluate the possible reasons for a claimant's failure to comply. SSR 16-3p; *Craft*, 539 F.3d at 679 (finding that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment"). Here, Plaintiff noted that she tried physical therapy several times and had multiple rounds of injections in her knees, all of which failed to provide lasting relief. [R. 47-48.] The ALJ's opinion neglected to mention those treatments or Plaintiff's purported desire to avoid temporary fixes. To the extent the ALJ relied on

10

Plaintiff's surgery election to discredit her subjective symptoms, the ALJ should have noted the aforementioned considerations.

Fourth, the ALJ erred in her assessment of Plaintiff's claim about her knee joints, which Plaintiff testified are "bone on bone." [R. 25.] Without citing any medical opinion to this effect, the ALJ characterized Plaintiff's knee imaging results as inconsistent with Plaintiff's testimony. *See Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) (finding that "[t]here is always a danger when lawyers and judges attempt to interpret medical reports"); *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (an ALJ cannot "play[] doctor"). However, Plaintiff's left knee MRI from June 2016 found "full-thickness articular cartilage fissuring at the lateral patellar facet and the apex with associated subchondral cystic changes," "superficial and focal full-thickness fissuring at the medial patellar facet without associated subchondral cystic changes," and "[f]ocal full-thickness articular cartilage fissuring at the trochlear ridge." [R. 1231.] In January 2017, Plaintiff's knee also showed "grade III and IV chondral changes on the patella" and "grade III and IV chondral changes in the trochlear region." [R. 838.] As no physician has interpreted these records, the ALJ should have refrained from "play[ing] doctor" herself and making her own medical finding. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Without expert testimony or other evidence, the Court cannot evaluate whether Plaintiff's knee joints are "bone on bone." On remand, Plaintiff's imaging results should be reviewed by a physician to determine the veracity of her claim.

    **c.**    **Right eye vision**

The ALJ also improperly characterized Plaintiff's statements about her right eye vision problems. While the ALJ wrote that Plaintiff "denied double or blurred vision at multiple appointments," the cited records instead indicate that Plaintiff "[d]enies *significant* blurred vision." [R. 26, 357, 371, 374.] (emphasis added). Further, Plaintiff expressly complained of blurred or double vision at several other doctor's appointments, including in November 2015, January 2016, April 2016,

11

August 2016, October 2016, and December 2017. *See Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) ("The fact [claimant] did not have a headache at the time of that visit is no reason to conclude anything about the frequency or severity of her migraines."); *Cole*, 831 F.3d at 416 (finding that "cherry picking the medical record" is improper). One of Plaintiff's doctors also noted that her blurriness coincides with flare ups of eyelid swelling on the right side. [R. 1629.] Those flare ups purportedly last for 3 days before resolving with Prednisone. *Id.*

The Social Security Administration recognizes that "[s]ymptoms may vary in their intensity, persistence, and functional effects," and thus ALJs are directed to review a claimant's record to evaluate possible causes of her apparently inconsistent symptoms. SSR 16-3p; *Fisher v. Berryhill*, 760 F. App'x 471, 477 (7th Cir. 2019). Here, the ALJ failed to inquire into Plaintiff's symptom fluctuations or to analyze the possible reasons for Plaintiff's apparently conflicting reports. *See Fisher*, 760 F. App'x at 477 (finding that an ALJ's failure to address claimant's symptom fluctuations "was a serious flaw"). Instead, the ALJ erred by cherry-picking from the record and selecting only those facts that supported her finding of non-disability. Though Plaintiff's medical records included several reports of vision or eye problems, the ALJ ignored that evidence in her analysis and summarily concluded that Plaintiff's allegations were inconsistent with the record. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (finding that "the ALJ may not ignore an entire line of evidence that is contrary to the ruling"). As the ALJ focused exclusively on Plaintiff's "good days," she erred by failing to recognize the documented fluctuations in Plaintiff's vision. *See Fisher*, 760 F. App'x at 477.

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff.

Entered: 07/16/2020

Susan E. Cox,
United States Magistrate Judge

13